Good morning. Jeremy Warren on behalf of Mr. Lopez. The issue in this particular case, it's a 922 G5 case, and the issue is the interpretation of the clause illegally or unlawfully in the United States. And as we know, it's an element of the offense that the alien has to be illegally or unlawfully in the United States before they can be convicted. This particular case was a, what I would call, border bus. Mr. Lopez drove into the port of entry as an applicant for admission into the United States, and he did have a gun in the car. We do know from the Bravo-Muskies case and from a number of other cases out of circuit that the term illegally or unlawfully in the United States is not defined by statute. Then the question is, how do we define it? And the debate in this case is whether you use as an immigration offense, which I believe this is, whether you turn to immigration law or not. The government's position is that in just simply means in within the soil of the United States and that the port of entry is in the soil of the United States. And I pointed out that the term in the United States for over 100 years has been interpreted to require not just in the United States within the soil, but also an entry that is free, freedom from official restraint. The Zavala case, which the government has cited for the proposition that in the United States just simply means the soil of the United States, the government leaves out, I think, the critical part of that case. It's an illegal entry case, found in case, but that the well-established proposition, and this is a quote from Zavala, is that a person is not in the United States until both they're physically present and free from official restraint. And so if you turn to the 1324 context, which is the alien smuggling cases, the government indicates, well, hey, even within immigration-related offenses, we don't look at, an entry is not required. The government has left out the fact that up until a change in the law in 1986, an entry was required. Congress deliberately changed the law to take away the entry by changing the statute from whoever brings into or transports a person who has entered the United States. The law was changed to you're only culpable of alien smuggling or transporting aliens if that person has been brought to or has come to the United States. The point I'm trying to make is that Congress understands the difference between the technical term of our in, which in the immigration context always requires presence plus freedom from restraint, from coming to or introducing to or bringing to the United States. And that's why a case like the Carranza case, which is the importation of marijuana that deals with contraband rather than an immigration status of the defendant, doesn't implicate the term entry or in, under an immigration context. So basically your argument is that in the immigration context, which ATF adopted in interpreting the statute, is when they use in or enter, those are defined as they are used in the immigration context. Right. Those particular words. Correct. I mean, there's no question in my mind that this is an immigration-related offense. I mean, two of the elements of the offense implicate, first, whether the person is an alien or not, and second, whether they're here illegally or unlawfully. Well, the statute isn't just directed at aliens. It's part of it, right? But somebody who has a gun who is an alien and so on and so forth. Right. The 922G5, that particular component of the statute is an immigration. The overall statute addresses a whole bunch of different kinds of characters who can't have guns. Right. Now, turning to the ATF interpretation, I would suggest that the Court not, first of all, to the extent that the Court gives, believes that the we should defer to an agency interpretation, which itself is a suspect concept in this context, if you look closely at the definition, the agency interpretation in 27 CFR, there is no definition of the term in. It deals with the status of the alien. It looks at things like did the person, was he paroled in, did he or she overstay their initial visa or student visa, that sort of thing, but doesn't define the term in. And secondly, the only case that has really taken a close look, in my opinion, at whether we should defer to the ATF's regulation or interpretation of this particular part of the statute, the Oriana case from the Fifth Circuit, which is a 2005 case, rejected it and said we don't think that, first of all, in a criminal context we should defer or give much deference to an agency interpretation, particularly by an agency that's enforcing the law. But secondly, the ATF is not in the business of regulating immigration. They're not they don't have any expertise. This isn't the type of situation like with the EPA or other types of regulatory offenses where we really have to defer to the expertise of an agency with the fine nuances of laws that aren't available or understandable. Kennedy. It's my understanding that actually ATF in this particular part of the reg deferred to INS, did it not? No. I'm not sure where the Court ---- Didn't they, when they published this reg, didn't they look to the INS to how to interpret the or how to modify the language of the reg? No. Well, my understanding is the ATF just promulgated the regulations. Now, they cite, if you look at the 27 CFR statute, it refers to immigration-related concepts like parole, overstaying entry, that sort of thing. But I don't believe so. My understanding is that the INS, that the VATF agreed with the INS that the wording of the definition for aliens illegally and lawful in the United States should reflect the terminology used in the Immigration and Nationality Act. Well, I don't believe that to be the case, and certainly that would be an incorrect interpretation of in the United States because of the fact that in the United States is a technical term of art that requires an entry. Well, I'm not sure what I read hurts you. Right. Well, and I don't mean to bicker with the Court. And I think ultimately I would ask the Court to take a look at the Oriana decision in terms of to the extent that the statute is ambiguous, then I think the rule of lenity should apply. The Oriana Court applied the rule of lenity in the case, found that it may have been a close call, but ultimately laws that are difficult to interpret or ambiguous have to be construed narrowly to the benefit of the defendant. And I would just suggest in this case it's not like as the government implies that he's seeking some sort of free pass. He certainly was convicted of the crime that he did commit, and there are a number of criminal codes that are statutes that could have been prosecuted in this regard, for example, 545 under Title 18, which is the general smuggling statute, it's a felony, carries up to a five-year sentence, and that includes an attempt provision. Did he get concurrent sentences? I believe he did. I was going to check that. Okay. Yeah. So we're not asking for remand for resentences. But he served the sentence on the one charge, and all that's involved here is whether or not he should stand convicted of two crimes or one. Correct. And then with that, unless there are questions at this time, I'd like to reserve a couple of minutes. Good morning, Your Honors. Ann Perry on behalf of the United States from the Southern District of California. In response to the arguments that have been made by Mr. Lopez-Pereira, the government would note that at the time that he entered the United States soil, he was in fact an illegal alien with no right to be in the United States, unlike the cases that were cited throughout the appellant's brief, Your Honors. Mr. Lopez-Pereira had absolutely no status in the United States. The various cases that have been cited talk about individuals who were present in the United States and had lost their status, had a visa. In the Orneas case that was just mentioned to you, Your Honors, it was a temporary permanent status that was only granted to individuals from El Salvador and other places where there was political strife. In this particular case, we have an individual who, by his own admission, had no legal entry into the United States. And as has been pointed out by, I believe it was Justice Fischer, that Title 18 United States Code, Section 922, delineates several classes of people that aren't — simply aren't allowed to have firearms, and that Congress has seen fit to say these types of people can't. I'm not familiar with all of that, but I didn't find in your brief any reference to the Sidhu v. Ashcroft case, which sets up three tests for whether you're in the United States or not. One is crossing the territorial limits. That was done. Inspection by an officer or evasion of inspection. And third, freedom from official restraint. Now, how did this guy get in the United States within the technical meaning of in when he was still under restraint? Well, there are two ways of looking at it, Your Honor, respectfully. Number one, the evidence in this case didn't show that he was in the United States free from — did not show that he had not come to the United States free from restraint, because, of course, at the time he was first encountered by any government officials, he was already a primary inspection. In other words, it is not analogous to the typical official restraint issues where somebody is seen crossing the border and he's being eyeballed as he comes in, that type of issue. Significantly, though, also, Your Honor, the Sidhu case deals with immigration. Well, so does this regulation. Yeah. I thought this case came in through immigration. This case, indeed it did. However, all of the official restraint arguments that have thus been — that have been previously argued do not deal with violations of Title 18, which is what this is. Didn't ATF adopt the regulation implementing this and adopt the language of the regulation in response to what I read to counsel in 1996? Didn't ATF adopt the regulation in response to INS's urging that they use the terminology of the INA? And therefore, why doesn't that mean that when one says somebody is in the United States, we look to immigration law cases? Because further, the regulations under the ATF, Your Honor, say that an alien illegally or unlawfully in the United States means someone who is in — not in valid immigrant, nonimmigrant, or parole status. Yeah. And that's 27 CFR section. And it goes on to say the term includes any alien who unlawfully entered the United States without inspection and authorization by an immigration officer and who has not been paroled in the United States under 212 D-5. That's what this guy is. Your Honors, the whole issue of — the Sidhu case also discusses something that I think is important for the Court's consideration, and that is that the term entry only is significant for purposes of immigration law because it established the burden of proof as to how this individual must establish their admissibility. In other words, if someone is attempting entry into the United States, the burden of proof is on the alien. If somebody is already here, then it's a deportable proceeding where the burden is on the United States. Have you found a case from this circuit or any other circuit that says that in the United States doesn't mean what Sidhu says it means? No. However, I think that in this particular case, in the United States, first of all, Mr. Lopez-Pereira conceded that he was in the United States. And because this is a Title 18 offense, this Court has rejected the notion that the concept of official restraint applies to Title 18 offenses. For example, the Hernandez-Garcia case. The same idea was brought up. I realize that's a Title 18 bringing in illegal aliens case. But the whole issue there was also brought up whether or not official — if there could be a bringing in of illegal aliens if they're under official restraint, and this Court said no. No, but they weren't interpreting in the United States. There's a whole jurisprudence around that terminology. What's troubling is that, you know, there's clear — not only is there that history and jurisprudence around it, but Congress actually amended one of the provisions as described to remove that ambiguity or that concern. I understand. And didn't do it with respect to this statute. I understand why it may be troubling to this Court. But I would also suggest that this is not the case to make that differentiation and the reason. Why? Well, for example, in the Sithu case, even Sithu had some kind of a status. None of these — Mr. Lopez-Ferreira never had status. He was simply a person without status who was in the United States. Where was he exactly? He was at the primary. He was at the port of entry. San Ysidro. He was at the San Ysidro port of entry. And that's the first time he was seen by anybody, and that's what the evidence was. But you're saying he was not free of — he was free of official restraint until he got to the primary? That was the evidence before the trier of fact, Your Honor. Well — But at that point, he wasn't in the United States because he was still trying to get in. Yeah, yeah, yeah. In the — whatever the statute number talks about being found in the United States after being —  1326. I know it was — yeah. That doesn't mean — that doesn't cover people who are in inspection, does it? If they get — if they get discovered that they're — That — those individuals would be charged with an attempted illegal entry. Right. And however — Attempted illegal entry, not with 1326. Absolutely. But the difference is that Title 18, the 922 section, simply puts Mr. Lopez-Perera in one of these classes. I understand the Court's concern. But because Mr. Lopez-Perera had no status — in fact, Your Honors have noted that he also made a false claim for U.S. citizenship for which he was convicted. He presented a document that he had obtained with false information. He had — he had also told the officers that he had actually gone down to Mexico to obtain some kind of papers that would allow him to continue to legitimately be in the United States. He isn't challenging his conviction for making a false claim. He's not. But I think that that conviction and that information can be used by this Court to show that his — that, again, because he had absolutely no claim to citizenship and because this — the whole concept of unlawful restraint has come as a result of the entry process and the 1326 cases before this case. Let me get back to — you cited in your brief and mentioned here Hernández Garcia. How does that help you? That was a guy driving a van full of illegal Mexicans who were not in the United States  But how does that help? Because he was — he was convicted of transporting illegal aliens with it. Absolutely true. The reason it helps us, Your Honor, is because, again, we have a situation where the concept of official restraint was being argued, saying that — Well, he argued that because the police were following him, he was under surveillance. That meant he was not free from restraint. Same thing here. But there's quite a little difference, isn't there, between a long, slow freeway chase and a guy standing there in secondary with — surrounded by officers who are about to tow him off to jail? That I understand, Your Honor. But I think that the difference is, is that this circuit has refused to apply the issue of unlawful restraint outside of the 1326 context, and I think that's important for this panel's consideration. Well, okay, but what do we do with the — that's — help me understand your argument. 922G5 says who — it shall be unlawful for any person who, being an alien — Right. Okay, so he's an alien — is illegally or unlawfully in the United States. Right. Okay, now then you turn to the CFR, and it says alien illegally or unlawfully in the United States. Aliens who were unlawfully in the United States are not in valid immigrant, non-immigrant, or parole status. Right. And it goes on to say the term includes any alien who unlawfully entered. So you didn't quote that latter part, that subpart A in your brief. You just relied on the lead-in. What is your argument then? You keep saying he doesn't have any status. Well, he had no valid immigration status. He did not have a non-immigrant visa, and he was not coming in on parole. All right, so he unlawfully entered. You're saying he was in, and he was attempting to unlawfully enter. He was in the United States because he was at the port of entry, which is considered to be the United States. Right. And then we say for immigration purposes, because of official restraint doctrine, he's not in unless he's free of surveillance and all of that kind of stuff. And you've just said at the point of entry, he's not in if it's an immigration case. He'd be attempting to get in. And then we look to the legislative history of the regulation, if you will, which is adopting the INA concept. And then you say, well, because this is Title 18, we shouldn't transfer immigration concepts. And that's the problem. Intuitively, I understand your argument, but I'm having trouble understanding why suddenly because, particularly when the regulation itself is importing INA concepts, what we're supposed to do with that. It seems to me you take the words in and enter, as they're normally used in the immigration context, and that requires being free of official restraint. Do you want to answer that because you've more than used your time? I'm sorry. He was physically present on the soil of the United States, as would a convicted felon or a mental defective. Either one of those individuals could still be charged under Title 18, Section 922, as could Mr. Lopez prefer. Okay. Just very quickly, the district court in this case found that at page 110 of the transcript or page 42 of the excerpt of record that Mr. Lopez clearly was not free of official restraint. The Zavala case is a good case. It's a brand-new case where it's in Alaska where a gentleman drives some distance within the territorial United States before he gets to the port of entry, which is up a hill. Look, I just wrote one that's even more recent than that, but talks about official restraint. Well, I don't think there's much question there. I think we know about that. I think the court understands the issue. The government, I don't believe, no one could possibly find that he was free from official restraint here. The question is not whether he's free of official restraint. The question is whether it's required for the purposes of this thing. You seem not to be aware of or influenced by the ATF's reliance on the INA. Split the middle. Well, I'm not aware of how they got to that, but it's clear that the CFR interpretation adopts immigration and INA type analysis of the statute, so I agree with the court in that regard. And I think I wanted to say that I think the court got it on the 1324, the alien smuggling case. The whole point is that in 1986 they took out the brings in. It's not that they don't think it applies. It does apply. The Aguilar case says that the, which was overruled by Congress in 1986, said that an entry had to be proven. And just finally, the government seems to be arguing that if someone has no legal status, then the term of entry or the concept of entry doesn't apply. But that can't be the case. All the illegal entry cases, the Title 1326 cases, involve people who have no status. They're deported aliens usually with criminal offenses on their record. They clearly have no right to come to this country. In that, in the 1326 context, it's required that they either have entered or if they're found in official restraint, they're charged with an attempt because they haven't completed the entry. So if it applies in that context, it clearly has to apply in this one. Thank you. Thank you.
judges: Schroeder, Goodwin, Fisher